NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO W.M.

No. 1 CA-JV 23-0116
FILED 04-30-2024

Appeal from the Superior Court in Mohave County
No. B8015JD202004032
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Michelle M., Kingman
*Appellant*

The Law Offices of Robert Casey, Phoenix
By Robert Ian Casey
*Advisory Counsel for Appellant Michelle M.*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Angela K. Paton delivered the decision of the Court, in which Judge Michael S. Catlett and Judge James B. Morse Jr. joined.

---

**P A T O N**, Judge:

**¶1**　　　　Michelle M. ("Mother") appeals the superior court's termination of her parental rights to her child, W.M.  We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　We view the facts in the light most favorable to upholding the superior court's ruling.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000).

**¶3**　　　　Mother has four children: E.B., born in 2013; M.B., born in 2016; R.B., born in 2020; and W.M., a child with special needs, born in 2021. The children's father ("Father") is not a party to this appeal.[1]  The parents have a significant history of domestic violence and substance abuse.

**¶4**　　　　The court placed E.B. and M.B. in a permanent guardianship in 2018.  The Department of Child Safety ("DCS") petitioned for R.B.'s dependency in July 2020, and, during those proceedings, discovered that Mother had given birth to W.M. in July 2021.  Upon discovering W.M.'s existence, DCS attempted to keep W.M. in the home subject to an in-home dependency while providing Mother with services to reunify her with R.B. But Mother continued seeing Father—despite DCS's concerns of domestic violence—and frequently left W.M. at home with "responsible adults" "for

---

[1] The superior court terminated both parents' rights to W.M.  Pursuant to Rule 607(e)(1)(B) of the Arizona Rules of Juvenile Procedure, Father's appointed counsel filed a notice in lieu of an opening brief, avowing that he reviewed the entire record on appeal and found no non-frivolous issue to raise.  We extended the time for Father to file a pro se opening brief and designated his appointed counsel as advisory counsel.  Father's deadline to file an opening brief expired on August 29, 2023, and he did not request an extension or otherwise indicate any intention to file a brief.  On November 28, 2023, this court dismissed Father from this appeal.

hours at a time." Additionally, W.M.'s hair follicle tested positive for methamphetamine and THC. In December 2021, DCS moved to terminate both parents' rights to R.B. and obtained physical custody of W.M.

¶5 On May 2, 2022, the court terminated the parents' rights to R.B. under Arizona Revised Statutes ("A.R.S.") Section 8-533(B)(3) (inability to discharge parental responsibilities) and Sections 8-533(B)(8)(a), (c) (nine and fifteen month out-of-home placement). The court found the parents have a history of domestic violence and substance abuse, R.B. and W.M. "have tested positive for illegal drugs while in the parents' care," and R.B. had been in an out-of-home placement since July 2020.

¶6 Specifically, as to Section 8-533(B)(3), the court found that "the evidence of ongoing domestic violence and dysfunction between the parents establishes that each parents' substance use negatively impacts their ability to parent and creates a hazardous environment for their children." And as to Section 8-533(B)(8), the court found that despite DCS's diligent reunification efforts, R.B. had not returned to the parents' care since his out-of-home placement in July 2020. The court also found that the parents' visits with R.B. were inconsistent, their overall engagement in services was intermittent, and the parents had "been blatantly dishonest with DCS," including that Mother "never disclosed that she was pregnant with [W.M.]" and "maintained a relationship with Father despite his significant history of domestic violence and substance use." The court then concluded that "each parent has been unable to remedy the circumstances that caused [R.B.] to be in an out-of-home placement."

¶7 In November 2022, DCS moved to change W.M.'s case plan to termination and adoption under Section 8-533(B)(10), alleging the parents continued to have "toxic and antagonistic communications," had been maintaining contact "and some sort of relationship," and that Mother "continues to struggle with being able to provide a consistent and stable environment for [W.M.]." DCS asserted these factors constituted the "same cause" for the prior termination of parental rights to R.B. *See* A.R.S. § 8-533(B)(10) (The court may terminate parental rights if the "parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause.").

¶8 After a contested termination trial in March 2023, the court concluded clear and convincing evidence established that Mother had her rights to R.B. terminated in the previous year and that she is currently

unable to discharge parental responsibilities. At the time of the trial, W.M. resided with his older siblings and their permanent guardian.

**¶9** The court gave credit to Mother for maintaining a separate residence from Father and for engaging in behavioral services but found that she still allowed Father to contact her and W.M., despite having an order of protection against him. The court found it particularly troubling that Mother hid W.M.'s existence from DCS, continued to have an unstable relationship with Father, and exposed W.M. to methamphetamines. Finding that W.M.'s current placement is an adoptive placement that would protect him and attend to his special needs, the court concluded termination is in W.M.'s best interests.

**¶10** Mother's appointed counsel filed a notice of avowal in lieu of an opening brief, *see* Rule 607(e)(1)(B), Ariz. R.P. Juv. Ct., stating he diligently searched the record and did not find any non-frivolous issues to present on appeal. He informed Mother that he found no non-frivolous issue to raise and that she may file an opening brief pro se. We ordered Mother's appointed counsel to remain her advisory counsel and set a deadline for her to file a pro se opening brief. Mother filed an "Amended Pro Se Opening Brief" on August 14, 2023.

**¶11** We have jurisdiction over Mother's timely appeal pursuant to Sections 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶12** To terminate a parental relationship, the superior court must find at least one of the grounds for termination in Section 8-533(B) proven by clear and convincing evidence, and that termination is in the child's best interests by a preponderance of the evidence. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). "The [superior] court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). We do not reweigh the evidence and will look only to determine whether reasonable evidence exists to sustain the court's ruling. *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Our supreme court has directed us to "affirm a termination order unless the [superior] court abuses its discretion or the court's findings are not supported by reasonable evidence." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 29 (2023) (citation omitted).

¶13        The superior court may terminate parental rights under Section 8-533(B)(10) if it finds "the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause." A.R.S. § 8-533(B)(10). "[S]ame cause" refers to the factual cause that resulted in the termination, not the statutory grounds. *Mary Lou C.*, 207 Ariz. at 48, ¶ 11. DCS must prove it made reasonable efforts to provide rehabilitative services to alleviate the cause or that such efforts would be futile. *See id.* at 49, ¶ 15 (citation omitted).

¶14        Mother's opening brief does not comply with our procedural rules; it contains no record citations, legal authority, or arguments for us to consider on appeal. *See* ARCAP 13(a); *see also* Ariz. R.P. Juv. Ct. 607(b). Her brief includes photographs of a child in the hospital and makes statements relevant to that. Although Mother is proceeding pro se, we must hold her briefing to the same standards as briefing presented by counsel. *See Flynn v. Campbell*, 243 Ariz. 76, 83–84, ¶ 24 (2017). We conclude Mother has waived any arguments relating to the termination of her parental rights on appeal. *See J.W. v. Dep't of Child Safety*, 252 Ariz. 184, 188, ¶ 11 (App. 2021) ("Arguments that are unsupported by legal authority and adequate citation to the record are waived.").

¶15        Nevertheless, we have reviewed the record, including the contested termination trial transcript and the superior court's termination order. The court found that "Mother disregards the fact that [the children] have all suffered a degree of abuse or neglect due in part to her decision to maintain some level of contact or relationship with Father," and that maintaining a relationship with Father "is contrary to [W.M.'s] best interests and leaves him at risk for further abuse and neglect." The record supports the superior court's finding that Mother had her parental rights to another child terminated within the preceding two years for the same cause, namely, that she allows contact with Father despite the risk of abuse. She had approximately one year to rectify the concerning circumstances but did not, and thus was unable to discharge parental responsibilities due to the same cause. Further, nothing in the record suggests that the court erred in its best-interests conclusion. The court found termination would provide W.M. with permanency, protection, and care for his special needs. It also concluded he will benefit from a safe and stable home with his older siblings.

¶16        In light of the superior court's "thorough findings of fact and sustainable conclusions of law with respect to both the statutory ground[]

for [termination] and the child[]'s best interests," we affirm. *See Jesus M.*, 203 Ariz. at 282, ¶ 16.

## CONCLUSION

¶17　　　For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:　TM